Good morning, Your Honors. Jerry Weiner appearing on behalf of the Appellant Szura. I have reserved four minutes of rebuttal time. Your Honor, this is an appeal from a decision made by the trial court judge in denying plaintiff's motion for summary judgment and granting defendant's motion. A reading of the record reveals that the only way the court could have made the decision it did, and the only way the appellee can take the position it is taking, is by rewriting effectively the policy of insurance, which is the gravamen that controls the outcome. Provisions were ignored or swept aside, and intent was assumed, with all respect to the conclusion reached prior to considering all the factors. The trial court held that the policy coverage was limited to claims by so-called customers, people who had either obtained a policy relationship. Now, that is what the defendant does, the plaintiff does. It is an insurance agency representing various insurance companies. The court closed in and concentrated on two words. It comes in the coverage section, and it talks about what it does for others. Now, it's important to note that the phrase others, or for others, is not defined in the term, and the court chose to ignore these. We argued that for others could not be limited to the extent that the court was limiting it, and we looked to language of the policy to support that You still have some other hurdles to get over, don't you, in that there's some alternative theories that appear to be involved. Well, I think the alternative theories, so to speak, are only supported by cases which are different in facts, with policies that have different language, and do not have the singular language that appears in the subject policy, relative to the duty to defend. When you put the coverage issue, it relates to indemnification. What claims have to be honored under the policy? What are the nature of the activities that are covered and those that are not covered? When you get to the duty to defend section, it doesn't create an ambiguity. It's treating something different. Coverage is coverage. Duty to defend is different, and the way this language is written, it's very strong. I will grant to you that in the research that we have done into other policies, this language is atypically strong in that regard. But that language that you rely on right now is what? I'm quoting now from the policy. Parenthetically, it starts out with language that the policy does not apply to a claim arising out of any dishonest, fraudulent, criminal, or malicious act, error, or omission, or acts of a knowingly wrongful nature committed by or at the direction of any insured. Now, if the language stopped there, Your Honor, I wouldn't be here. I understand. It goes on. We, a insurance company, we will defend the insured against such claim unless or until the dishonest, fraudulent, criminal, malicious, or knowingly wrongful act has been determined by any trial verdict, court ruling, regulatory ruling, or legal admission, whether appealed or not. And your position is that the duty to defend is broader than their ultimate indemnity requirement. And the first part of that language refers to claims they have to pay, but the second part refers to what they have to defend. Right. And they tend to qualify each other. Being in the same section, talking about exclusions, this is an exception to the duty to defend. It's one thing to take the position, what is alleged against you is not covered by the policy in terms of us having to pay out money. It is not considered a justiciable claim by us. It's totally different than saying, until that is ferreted out, until you either step forward and say, yes, I did those things, or there's a finding, either through arbitration or a court proceeding or however it is, regulatory or otherwise. We will defend. I suppose, among other things, your opponent would argue that an exclusionary clause can't create coverage. That we're not talking about coverage. We're talking about that some are classically covered, some are not, some are vague. They're vague sometimes by the nature of the formal complaint filed against the insured. But there's case law, as we've cited in our brief, that says you can't rely on the scrivener of the underlying plaintiff to come to the conclusion that they came to. What about the earlier unqualified language, we have no duty to defend any claim not covered by this policy? That relates to coverage. That relates to the duty to indemnify. Well, then how does the conduct that's alleged here is not negligence, correct? Correct. And so wrongful act under the policy is a negligent act, correct? Well, actually, the wrongful act language is defined in the policy as any actual or alleged negligent act, error or omission. Well, the conduct here is intentional conduct, right? The way the plaintiff couched the language in the complaint that was filed, the answer to that question is yes. But it has to be, my yes has to be modified in two ways. One is after the fact that there was an arbitration in that underlying matter and Zura was totally absolved and said it did not engage in any wrongful acts intentionally or unintentionally. Now, I realize that's after the fact and I'm not trying to bootstrap the outcome. Well, the claim was never based on allegations of negligence. That wasn't what the plaintiff was trying to establish, correct? That is correct. But that's not all that's stated where it says in the definition of wrongful act is defined as any actual or alleged negligent act, error or omission. Now, the fact that the complaint didn't use the word error or omission. Well, you're not trying to say that negligent is not an adjective modifying all three of those, are you? The answer is yes, I am. Because I think it is arguably as feasible a conclusion syntactically as to what it modifies and what it doesn't modify. And one could diagram this sentence in more than one way. And that brings us into the focus that it's certainly basic contract law when it comes to insurance policies and certainly the law in the state of Michigan. That where there is a vagary, where there's the possibility of it not being clear, the duty to defend and coverage must be construed against the insurance company and in favor of the insured. That is the state of the law. When you put that back to what the trial court did by going a la yunda, by going outside the four corners of the document to come up even using the language the probable intent, the worst result for the appellant in this case, the worst result is that there were questions that could be questions of fact such as intent. What was intended by this? What was the meaning of language in the policy? It should not have been summarily dismissed, but it should have been left open for trial. Well, even if you were, even if we were to credit your interpretation of negligent not modifying error or omission, was, did the complaint allege an error or omission? Would error or omission include intentional acts? It didn't use that language. That's number one. And number two, the language that we have been focusing on for the last two or three minutes comes in the coverage section. It doesn't come in the section dealing with duty to defend. And what the duty to defend is, we're going to represent your interests until it appears for some happening that you don't qualify. It's a freestanding obligation. The language we're discussing now is defined in the coverage area, the right, the obligation to indemnify. And as Judge Guy in a question indicated, it's much broader when it comes to the duty to defend than it is in coverage. I see my time is up, so. You'll have your rebuttal time. Thank you very much, your honors. You guys know that the- May it please the court. I think the panel is on the right track. The Michigan Supreme Court has said, in the Allstate versus Freeman case, that there's a two-step process to examining any insurance coverage dispute. First, you look at whether there's coverage. Second, you look at exclusions. In fact, that was in the Bukowski case. In the Allstate versus Freeman case, adopting a decision from the Maryland Court of Appeals actually said that it was improper and frankly irrelevant to even look at exclusionary language if there's no coverage applicable under the coverage grant. And when you look at the coverage grant, and it does include the phrase, we have no duty to defend any claim not covered by this policy. The coverage grant says, essentially, we will pay on behalf of the insured damages that the insured becomes legally obligated to pay because of claims made against the insured for And when you dissect the elements of the coverage grant, the first thing you look at is the definition of wrongful act. And as the panel was stating, the question is whether the phrase negligent acts, errors, or omissions allows any coverage for intentional acts. And the case law is clear that it does not. This court has ruled in such a circumstance in the Northland versus Stewart title case. To quote from the Fourth Circuit in the employer's reinsurance case, cited in the underlying briefs, in accordance with the grammatical rules and popular usage, the adjective negligence modifies every word in the series. The one federal trial court said the term negligent must modify the words act, error, and omission because it would be self-defeating to limit the definition of the phrase to negligent acts, but at the same time, cover intentional errors and omissions. To do otherwise would render the word negligent meaningless. So in order for there to be any obligation for us to defend, the claim must satisfy the insuring agreement. It cannot satisfy the wrongful act component because the allegations against Zura clearly are intentional. They're stated as such in the complaint. The elements of those causes of action are indeed solely based on intentional interference with contract. I mean, the claim is essentially that Sharon, Zura's new agent, violated a non-compete agreement with his prior employer by soliciting clients of that former employer. And they allege that Zura was a part of that effort. That's the case. So- Your position, very simply, that if the complaint had alleged, or a complaint, let's say, has alleged that the defendant negligently or intentionally did X, Y, and Z, you would have to defend, but you may not be liable at such point in time as there had been a termination that it was actually intentional acts. Exactly right. And, but in the instance such as this where it's only intentional conduct, it, you can't leapfrog the insuring agreement and bootstrap that, that last phrase in that exclusion to say you gotta cover the case. In effect, negating the coverage grant. And that's exactly what the appellant wants to do. And that is fundamentally against the rules of construction in Michigan. And in fact, it's contrary to the rules of construction, the rule of construction that the appellants here advocate the most. And that is that you must read the policy as a whole. But what they, and that phrase is correct, but it's half a phrase. It's actually, you must read the policy as a whole and give effect to every word such that no word is deemed mere surplusage. If you adopt the appellant's position, you're creating a situation where you're deeming the coverage grant, the wrongful act, whether it was professional services, whether it was professional services for others. All of those aspects of the coverage grant are negated and rendered as mere surplusage because now we would be obligated to defend a claim that is solely an intentional act. That's our whole position. Thank you, Your Honor. Mr. Weiner. The only way the appellee can say that that is their sole position is to rely on the language used by plaintiff's counsel in the underlying action. If he called a lion a bird, it doesn't mean that it's not a lion. Now that's a bizarre example, but I'm trying to point out that the only way to reach that conclusion is to rely on some other scrivener who's not a party to the action and whose client is not a party to this action. Well, I understand the argument you're making, and in some instances that might have some validity. But the nature of the wrongdoing alleged here almost would have to be intentional. I don't know how one could negligently do what the plaintiff accused is defendant of doing in the underlying lawsuit. In your honor, for what you just said, that's exactly why there's a provision of duty to defend. Because you use the word almost. Now, that's why that provision is there. The entire argument here was talking about the standards as to whether there's coverage. It is obvious from the exclusion provision, which I don't know why it was named that, but again, the cases are clear, don't rely on titles. But the reason that that was in there is it creates another duty. I'm not going to say it transcends the question of coverage, but if it's almost until it is definitive, they have an obligation to defend. And it clouds the issue by coming back to the elements of indemnification and the test to show that there's coverage. It doesn't strike the issue. There had to be a reason why that language was put into the policy. Well, one reason would be the one I suggested pleading in the alternative. Well, it may be, but again, now we're back at not looking at the relationship between the parties, what the intent was, what the expectation was, what the consideration was for entering into this insurance policy between the insured and the insurance company. Now we're going beyond that and we're looking to the way allegations were made by some person who's not a party to this. We shouldn't be controlled by that. We should be looking at the document itself, looking at what it says and asking ourselves if there's any vagary because both sides have said to the court in writing, we don't consider this to be ambiguous. So we're looking at the document. We've got to go back and ask ourselves, why is it here? Okay. It can't rely on what a third party puts down in writing. It has to rely on the reason that the relationship between the insured and the insurance company as to what it will protect and what it will not protect. And while there's a question, any question which has to be construed against the insurance company, while there's any question as to whether there is coverage, the provision about duty to defend is extant and it should be honored. They chose not to and the trial court chose to ignore it. We should not leave this case in that posture. Thank you very much. We appreciate the argument both of you have given and we'll consider the case carefully. Thank you.